IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| eXp REALTY, LLC | : | |
| and | : | |
| SUBURBAN REALTORS ALLIANCE, | : | |
| Plaintiffs, | : | |
| v. | : | No.  _____-_____ |
| | : | |
| BOROUGH OF GLENOLDEN, | : | |
| BRIAN RAZZI, | : | |
| ANTHONY TARTAGLIA, and | : | |
| COMMONWEALTH CODE | : | |
| ENFORCEMENT, INC., | : | |
| Defendants. | : | |

**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

Plaintiffs, eXp Realty and Suburban Realtors Alliance, for their Complaint against

Defendants, Borough of Glenolden, Brian Razzi, in his official capacity, and Anthony

Tartaglia in his individual capacities and Commonwealth Code Enforcement, Inc., allege

as follows:

**NATURE OF THE ACTION**

1.      This is a civil action pursuant to 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C.

§ 1988 and 28 U.S.C. §§ 2201 and 2202, wherein Plaintiffs pray for declaratory judgment,

reasonable attorney's fees and both preliminary and permanent injunctive relief to

restrain and enjoin Defendants, Borough of Glenolden, as well as its agents, employees,

and representatives, including Brian Razzi, Anthony Tartaglia and Commonwealth

Code Enforcement, Inc. from acting under color of state law to deprive the Plaintiffs of

1

their rights, privileges, and immunities secured by the Constitutions of the United States and of the Commonwealth of Pennsylvania. Specifically, Plaintiffs seek to have this Court declare as unconstitutional, as it is being applied, Ordinances 61-1 through 61-9, known as Chapter 61 — Certificates of Occupancy of the Glenolden Borough Municipal Code (the "Ordinances") and to enjoin further enforcement of it in any way that is inconsistent with the Municipal Code and Ordinance Compliance Act of the Commonwealth of Pennsylvania ("MCOCA"), 68 P.S. § 1082.1 *et seq.*, or the plain text of the Ordinances themselves.  A copy of the Ordinances is attached to hereto at Exhibit "A" and incorporated throughout by reference.

2.      In addition, Plaintiffs seek to prevent Defendants from depriving residents of Glenolden Borough of their constitutionally protected rights and subjecting real estate agents selling properties within Glenolden Borough and title companies holding real estate closings within Glenolden Borough to criminal penalties and sanctions in connection with Defendants' unconstitutional efforts to enforce the Ordinances relating to occupancy permits against Plaintiff eXp Realty and SRA's members, where Pennsylvania law clearly preempts such enforcement under the Ordinances themselves under MCOCA.

## **PARTIES**

3.      Plaintiff, eXp Realty, LLC ("eXp Realty"), is a Washington limited liability corporation registered to do business in Pennsylvania and which operates a real estate

2

brokerage located at 1500 Carter Pl., West Chester, PA 19382, with its principal place of business located at 2219 Rimland Dr. Suite 301, Bellingham, WA.   During the times relevant to this complaint, independently contracted agent Linda Ng was affiliated with Plaintiff eXp Realty.

4.      Plaintiff, Suburban Realtors Alliance ("SRA"), is a subsidiary corporation of the Bucks County Association of REALTORS®, located at 1452 Old York Road, Warminster, PA 18974, and the Tri-County Suburban REALTORS® Association located at 1 Country View Road, Suite 202, Malvern, PA 19355. SRA, together with its member entities, exists to advance and protect the interests of Realtors and their clients, whom they represent, in connection with the sale and purchase of real estate. One such interest the SRA identified as requiring protection, on behalf of those it represents, is the uniform and standard application of local code provisions in connection with local municipalities, townships and boroughs of the Commonwealth of Pennsylvania in the issuance of use and occupancy permits upon the purchase and sale of real estate.

5.      Plaintiff eXp Realty is a member of Plaintiff SRA.  As set forth herein, SRA's member Plaintiff eXp Realty, has suffered a concrete and particularized injury that is actual and imminent, fairly traceable to the defendants, and redressable by the relief sought herein.

6.      The Borough of Glenolden ("Glenolden Borough") is a political subdivision of the Commonwealth of Pennsylvania, duly organized and operating under the laws of

the Commonwealth of Pennsylvania and deriving its power therefrom. All of the acts of the Glenolden Borough which are the subject of this Complaint were and are being made under color of law and the ordinances, regulations, customs and usages of Glenolden Borough. The Borough of Glenolden maintains an office at 36 Boon Avenue, Glenolden, Delaware County, PA 19036.

7.      Defendant, Brian Razzi ("Razzi"), is a citizen of the Commonwealth of Pennsylvania and is the Borough Manager of Glenolden Borough and has the duties and responsibilities to establish ordinances, policies, laws and regulations of Glenolden including, but not limited to, those governing the administration and enforcement of same. Mr. Razzi maintains an office at 36 Boon Avenue, Glenolden, Delaware County, PA 19036.

8.      Defendant, Anthony Tartaglia, ("Tartaglia") is a citizen of the Commonwealth of Pennsylvania and, upon information and belief, is the current Chief of Code Enforcement for Glenolden Borough and has the duties and responsibilities to establish ordinances, policies, laws and regulations of Glenolden Borough including, but not limited to, those governing the administration and enforcement of same. Mr. Tartaglia resides at 251 Davis Ave., Apt. B, Clifton Heights, PA 19018.

9.      Messrs. Razzi and Tartaglia are collectively referred to herein as "Borough Officials."

10.     Commonwealth Code Enforcement, Inc. ("CCEI") is a corporation located at 427 North Springfield Road, Clifton Heights, PA 19018, and is owned and operated by Anthony Tartaglia.  Upon information and belief, Glenolden Borough also retains CCEI, as well as Anthony Tartaglia in his individual capacity, to illegally enforce Glenolden Borough's code provisions relating to its certificates of occupancy permits.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this case pursuant to 42 U.S.C. § 1331, and, as to the state law claims, pursuant to this Court's supplemental jurisdiction under 28 U.S.C. § 1367.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c) because the events and omissions giving rise to Plaintiffs' claims occurred and are occurring in this district, and all Defendants do business in or are citizens of the Eastern District of Pennsylvania.

## FACTUAL BACKGROUND

### *Pennsylvania's Enactment of the Municipal Code and Ordinance Compliance Act and Glenolden Borough's Delay in Adopting MCOCA*

13.     In 2016 and effective on January 3, 2017, the Pennsylvania Legislature enacted the Municipal Code and Ordinance Compliance Act ("MCOCA"), 68 P.S. § 1082.1 et seq. to address both the non-uniformity of municipalities' code provisions relating to occupancy permits as well as municipalities' arbitrary enforcement of those code provisions.

5

14.     While not attempting to regulate the specific building or construction codes adopted by each municipality or applied to any property, MCOCA requires that municipalities issue one of three types of occupancy certificate when requested by a homeowner and specifies the types of certificates that municipalities must issue in given situations, sets forth the compliance requirements and inspection procedures for bringing the property into full compliance with the municipalities' ordinances, and sets forth the permissible penalties for violations.

15.     To resolve both facial invalidities and enforcement inconsistencies between their existing ordinances and MCOCA, certain townships and municipalities amended their codes by either expressly adopting MCOCA or adopting provisions recognizing the supremacy of MCOCA over their local codes.

16.     Until the end of 2019, Glenolden Borough refused to either expressly adopt MCOCA or adopt a MCOCA supremacy provision and continued to enforce its unconstitutional pre-MCOCA ordinance.   It was not until 2019 when defending litigation regarding its unconstitutional Ordinances and its arbitrary enforcement of those ordinances that Glenolden Borough adopted MCOCA compliant Ordinances.

17.     Nevertheless, while Glenolden Borough's amended Ordinances comply, for the most part, with MCOCA, since 2019, Glenolden Borough has repeatedly enforced the Ordinances in ways that violate both MCOCA and the Ordinances themselves.

### *Glenolden Borough's Municipal Code Requirements For Certificates of Occupancy In Connection with Property Transfers*

18.     Glenolden Borough has enacted the Ordinances, purportedly pursuant to

Section 1008(b) of the Borough Code, 53 P.S. § 46008(b).

19.     Glenolden's Ordinances requires that:

> No person, unless otherwise excepted by Pennsylvania law or § 61-5 below, **shall occupy** any lot or portion of any lot, dwelling, dwelling unit, building, building unit, office or business or storage unit in the Borough of Glenolden, and **no person owning** any dwelling, dwelling unit, lot, building, building unit, office or storage unit shall lease, rent or allow such dwelling, dwelling unit, lot or any portion of such lot, building, building unit, office, business or storage unit to be occupied by another without each first making application to and obtaining from the Borough Council or its designated agent a certificate of occupancy for such dwelling, dwelling unit, lot or portion of lot, building, building unit, office, business or storage unit.

Ordinance § 61-2.1A at Exhibit "A."

20.     The Ordinances establish how an owner preparing to sell his or her

property obtains a U & O Certificate.  It provides:

> **Owners** of existing structures that do not have a valid use and occupancy certificate shall complete an application for use and occupancy certificate, pay the applicable fees and schedule an inspection with the Code Official or its designee.

Ordinance § 61-2.1C (emphasis added), at Exhibit "A."

21.     Consistent with MCOCA, [1] following an inspection requested by a

homeowner under § 61-2.1C, Section 61-3 "Issuance of Certificates" describes the three

---

[1]   MCOCA provides:

types of certificates that the Borough is required to issue (as appropriate) and when

the Borough must issue the applicable certificate:

[t]he Borough of Glenolden Borough **shall** issue certificates in the following manner:

A.   If the Borough inspection reveals no deficiencies or violations a use and occupancy certificate will be issued.

B.   If the Borough inspection reveals at least one deficiency or violation, but no substantial violations, the Borough will issue a temporary use and occupancy certificate.

C.   If the Borough inspection reveals at least one substantial violation, the Borough will specifically note those substantial violations on the inspection report and will issue a temporary access certificate.

D.   Any deficiencies, violations or substantial violations revealed by an inspection shall be identified by the Borough, in writing, and **shall accompany the certificate that is issued**.

Ordinance § 61-3 (emphasis added), at Exhibit "A."

22.   Consistent with MCOCA,[2] the Ordinances provide that if the seller does not

or cannot make the repairs prior to the sale, following the sale, the buyer to either

---

(a)   General rule.—A municipality requiring a use and occupancy certificate shall issue the certificate in the following manner:

(1)  If the municipal inspection reveals no violations.

(2)  If the municipal inspection reveals at least one violation, but no substantial violations, the municipality shall issue a temporary use and occupancy certificate.

(3)  If the municipal inspection reveals at least one substantial violation, the municipality shall specifically note those items on the inspection report and shall issue a temporary access certificate.

68 P.S. §1082.1.

[2] (a)     General rule.     Within 12 months of the date of purchase, the purchaser of a property known to be in violation of a municipal code or ordinance shall, at his option, either:

(1)   bring the property into compliance with municipal codes or ordinances; or

(2)   demolish the building or structure in accordance with law.

(a.1)   Negotiation of longer time periods --At the request of the property owner, the municipality may negotiate, at its discretion, longer time periods for maintenance and repair of the structure under a temporary certificate, but the time periods stated in subsection (a) may not be shortened.

(a.2)   Inspection of the Property –

demolish the building or make the required repairs within **twelve (12) months** of the date of purchase.[3]   Ordinance § 61-6A (emphasis added), at Exhibit "A."

23.   Also consistent with MCOCA, while the municipality may negotiate longer time periods for maintenance and repair of the structure under a temporary certificate, **the 12 month time period to bring the property into compliance may not be shortened**.

*See* Ordinance § 61-6B (emphasis added), attached as Exhibit "A."

---

(1)   At the expiration of the time period set forth in subsection (a) or before that time, if requested by the property owner, the municipality shall reinspect the property for the purpose of determining compliance with the cited violations.

(2)   If a temporary access permit has been issued and reinspection indicates that the noted substantial violations have been corrected but other cited violations have not yet been corrected, the municipality shall issue a temporary use and occupancy permit to be valid for the time remaining on the original temporary access permit.

(3)   If the reinspection indicates that all noted violations have been corrected, the municipality shall issue a use and occupancy certificate for the property.

(b)   Penalty –

    (1)   Failure to comply with the requirements of subsection (a) shall result in:

        (i)   Revocation of the temporary certificate.

        (ii)   The purchaser being subject to any existing municipal ordinances or codes relating to the occupation of a property without a use and occupancy certificate.

        (iii) The purchaser being personally liable for the costs of maintenance, repairs or demolition sufficient to correct the cited violations, and a fine of not less than $1,000 and not more than $10,000.

68 P.S.. §1083(a), (a.1), (a.2) and (b)(1).

[3]   One of the key benefits of MCOCA and the Ordinances if they were enforced consistent with their terms is that they contain mechanisms to relieve practical problems, by requiring occupancy certificates be issued *prior* to a transfer of the property, without depriving the municipality of the ability to control what repairs are needed and benefit from the overall improvements to the community.

For example, while curbing and sidewalk repair are frequently the subject of repairs required to obtain occupancy certificates, concrete repair is often difficult, impractical or impossible during winter months. MCOCA relieves this problem by allowing homeowners that wish to sell their homes to do so during these months, without unnecessary delays because of weather.  Likewise, prospective buyers are typically unwilling to make repairs prior to completing the purchase of the property, however, by removing the pre-condition of having to make the repair and obtain the occupancy certificate prior to the sale, MCOCA allows buyers to make the necessary repairs after the sale is complete, where selling homeowners are unable to do so for economic or other reasons.  At the same time MCOCA protects the municipality's interest in requiring that the repairs ultimately be made.

24.     Finally, like MCOCA, Glenolden Borough's Ordinances set forth the potential penalties for failure to comply with the certificate of occupancy requirements to the following:

(1)     Revocation of the temporary certificate;
(2)     The purchaser being subject to any existing Borough ordinances or codes relating to the occupation of a property without a use and occupancy certificate; and
(3)     The purchaser being personally liable, for the costs of maintenance, repairs or demolition sufficient to correct the cited violations, a fine of not less than $1,000 nor more than $10,000.

Ordinance § 61-6D (emphasis added), at Exhibit "A."

### *Glenolden Borough's Intentional Custom and Practice of Disregarding the Plain Language of Its Ordinances and MCOCA When Enforcing Those Requirements*

25.     Although Glenolden Borough amended its Ordinances to comply with MCOCA, Glenolden Borough, CCEI and the Borough Officials nevertheless enforce its Ordinances in ways that violate the clear restrictions and requirements of MCOCA and the Ordinances themselves, by repeatedly ignoring the requirements and restrictions of MCOCA and the Ordinances and attempting to apply the Ordinances arbitrarily and beyond the limitations contained in the plain language of the Ordinances themselves.

26.     The Borough Officials have implemented unconstitutional obstacles to obtaining a U & O Certificate wherein they attempt to shift their own statutory obligation to issue a U & O Certificate onto the seller, buyer or the seller's agent and then attempt to blame the other party for their own failure to issue any U & O Certificate.  One such

example is the "Buyer's Acknowledgement" form that the Borough Officials have created and require a prospective purchaser to execute if the property inspection reveals one or more deficiencies or violations. A true and correct copy of Glenolden's Buyers Acknowledgement is attached hereto as Exhibit "B."

27.     If a prospective buyer will not execute the Buyer's Acknowledgement, Glenolden Borough and the Borough Officials will not issue <u>any</u> U & O certificate, despite the fact that MCOCA and the Ordinances *require* that the Borough Officials issue one of the three types of U & O Certificates at the time the report of the inspection is provided.  *See* Ex. "C" email from Borough Manager Brian Razzi explaining that no U & O was issued because the Buyer did not execute the Buyer's Affidavit.

28.     Similarly, the Borough Officials attempt to blame sellers or their brokers or agents, like Plaintiff eXp Realty and SRA's members, for the Borough Officials' own unconstitutional refusal to issue *any* U & O Certificate by claiming that the Borough Officials could not issue any U & O Certificate because the seller or its broker or agent did not indicate what type of U & O Certificate they were seeking, despite the fact that the Ordinances and MCOCA place the burden <u>*on the municipality*</u> to determine which U & O Certificate is appropriate based on the inspection and to issue that certificate – without the imposition of any other qualifications, obstacles or other delays.  *See* Ex. "C" ("the broker did not indicate they wanted any transfer certificate other than full occupancy")

29.     Likewise, the Borough Officials attempt to blame sellers or their brokers or agents for unspecified information that was provided on the U & O application as a basis to refuse to issue a U & O Certificate, even after the property has been inspected and any updated or altered information regarding the property did not prevent a full inspection from being completed after which the borough must issue a U & O Certificate as required by the Ordinances and MCOCA without further delay or obstacles.  *See* Ex. "C" ("the broker didn't promptly inform the borough of any changes made to the property which alters the information on the application.")

30.     In addition, in 2020, the Borough Officials enacted § 135-28 that requires home sellers to obtain sewer lateral inspections prior to the issuance of a U & O Certificate under the Ordinances.  While the code provision is not in and of itself objectionable, the Borough Officials' enforcement of this new provision is blatantly in violation of both MCOCA and the Ordinances in that they are: (i) requiring the execution of a Buyer's Affidavit, (ii) mandating that the repairs be completed within six (6) months of the property transfer, and (iii) falsely advising homeowners that "the resale certificate may be issued at the borough's discretion."  *See* Glenolden's "Notice of New Procedure for Resale Certificate" attached as Exhibit "D" hereto.

31.     Most egregiously, however, the CCEI and Defendant Tartaglia are now attempting to extend the reach of the Ordinances and impose penalties under the Ordinances against parties not subject to the Ordinances or MCOCA such as title agents

12

and brokers/real estate agents, both of which have never owned or occupied any property in Glenolden, in transactions where Glenolden did not issue a certificate of occupancy.  *See* Magisterial Docket No. MJ-32252-NT-01112-2022 filed in Aldan Borough by Defendant Tartaglia asserting criminal code violations against the real estate agent and title company involved in a sale where no U & O certificate was issued pre-closing.

### *Glenolden Borough's Intentional Custom and Practice of Disregarding the Plain Language of Its Ordinances and MCOCA When Enforcing Those Requirements In This Case*

32.     On or about March 11, 2022, George Kiesel ("Seller") of 115 E. Lamont Avenue, Glenolden, PA 19036 (the "Property") entered into an agreement for sale of the Property with the purchaser Armah Razak.

33.     Seller retained Plaintiff eXp Realty to represent him in connection with the sale.

34.     In preparing for the prospective sale of the Property, Plaintiff eXp Realty through its affiliated agent, Linda Ng, submitted an application for inspection of the Property to Glenolden Borough for the purpose of obtaining a Use and Occupancy Certificate ("U & O Certificate")[4] on Seller's behalf.

35.     Neither Plaintiff eXp Realty, nor its agent Linda Ng, have ever had any ownership interest in the Property, but were at all times acting as the agents for Seller in connection with the Property.

---

[4]     Use and Occupancy Certificates are also referred to interchangeably as "Use and Occupancy Permits" or "Certificates of Occupancy."

36.     On April 19, 2022, CCEI, on behalf of Glenolden Borough, inspected the Property and noted a few repairs that were required.  *See* Inspection Report attached hereto as Exhibit "E."  The Inspection Report states that "A Re-Inspection is Required within 30 days".  *See* Exhibit "E."

37.     While none of these violations are "substantial violations" under MCOCA, in direct contravention of MCOCA, Glenolden Borough, the Borough Officials and CCEI simply refused to issue any type of occupancy certificate to Plaintiff eXp Realty on behalf of Seller, despite the fact that MCOCA requires that – at minimum -- a temporary occupancy certificate be issued so that the seller be permitted to sell the property with the repairs to occur after the sale.

38.     On April 29, 2022, the Property was sold without Glenolden Borough, CCEI or the Borough Officials having issued any U & O Certificate.

39.     On May 19, 2023, although docketed on June 1, 2023, Defendant Tartaglia, acting through or in conjunction with CCEI and Glenolden Borough, filed a criminal citation against Seller's Broker, Plaintiff eXp Realty, for failing to obtain a certificate of occupancy prior to the sale ("Criminal Citation").  *See* the Criminal Citation and Summons attached hereto as Exhibit "F."

40.     The Criminal Citation charges Plaintiff eXp Realty with "Transfer w/o Certificate of Occupancy" and attempts to impose a fine of $256.19. *Id.*

41.     The Criminal Citation requires Plaintiff eXp Realty to "plead not guilty" or to "plead guilty" to the charges. *Id.*

42.     Plaintiff eXp Realty has entered a plea of "not guilty" on the Criminal Citation issued by Glenolden Borough.

43.     The Magisterial District Court in Glenolden Borough has scheduled a hearing on the Criminal Citation for November 6, 2023.

44.     Whenever it is eventually held, the hearing before the Magisterial District Justice will be a summary trial on the charge of having violated the Ordinances for ""Transfer w/o Certificate of Occupancy."  *See* Exhibit "F."

45.     The issuance of Criminal Citation to Plaintiff eXp Realty is in direct violation of MCOCA and attempts to extend criminal penalties for the failure to have a U & O Certificate to parties that have never owned or occupied real estate in Glenolden Borough and to whom penalties cannot apply under the plain language of MCOCA and the Ordinances, rendering such enforcement efforts unlawful under both MCOCA and the Ordinances.

46.     Specifically, both MCOCA and the Ordinances prohibit any person from **occupying** any property or **owning/renting** any dwelling within Glenolden Borough without having first obtained a certificate of occupancy for such property or dwelling. *See* Section 61-2.1.  Nothing in the Ordinances nor MCOCA authorizes an extension of

liability beyond parties that own, occupy or rent either a property or dwelling in Glenolden Borough.

47.     Moreover, Plaintiff eXp Realty cannot be subject to criminal sanctions under the Ordinances or MCOCA inasmuch § 61-6D of the Ordinances explicitly limits penalties under the Ordinances to: (i) revocation of the temporary certificate; (ii) **the purchaser** being subject to any existing Borough ordinances or codes relating to the occupation of a property without a use and occupancy certificate; and (iii) **the purchaser** being personally liable, for the costs of maintenance, repairs or demolition sufficient to correct the cited violations, a fine of not less than $1,000 nor more than $10,000. Ordinance § 61-6D (emphasis added).

48.     Because Plaintiff eXp Realty never owned, rented or occupied any property or dwelling within Glenolden Borough, and because penalties are not available against parties other than the purchaser under § 61-6D, the Borough Officials' attempt to expand the reach of the Ordinances and impose criminal sanctions against Plaintiff eXp Realty violates the constitutional rights of Plaintiff eXp Realty.

49.     In addition, although an inspection was performed before the transfer of the Property, the Borough Officials refused to issue any kind of U & O Certificate, although it was their obligation to do so under MCOCA and the Ordinances when the inspection was preformed, and the Borough Officials' obligation to issue the U & O Certificate is not subject to and cannot be qualified by any other parties' actions such as

the buyer completing a Buyer's Acknowledgement, Seller or its agent advising which type of U & O Certificate it preferred, or the Seller or its agent having to update information on the U & O Certificate application.  *See* Ordinance § 61-3.

50.     Defendants know or should know that their enforcement of the Ordinances is contrary to MCOCA and, as such, unconstitutional, and such unconstitutional enforcement by the Defendants cannot be made in good faith, for a proper purpose, or as a part of the advancement of any legitimate state interest, but Defendants have nevertheless brought the criminal proceeding identified in the Criminal Citation in bad faith, for the purpose of harassing Plaintiff eXp Realty.

51.     Because Glenolden Borough and the Borough Officials' actions and conduct is wholly unchecked, with no right of appeal and no mechanism to challenge the unconstitutional enforcement of the Ordinances, Plaintiff eXp Realty's and SRA's other member's constitutionally protected rights are likely to be violated again and again when they act as agents to sell other properties.

52.     Upon information and belief, the Defendants routinely, as a pattern and practice and custom, enforce the Ordinances in violation of MCOCA as well as their own ordinances by refusing to issue occupancy certificates, requiring affidavits containing personal guarantees and requiring repairs within a shortened time frame, all contrary to the requirements and restrictions of MCOCA.

53.     Defendants' actions violating the constitutional rights of Plaintiff eXp Realty, and all others, have been consciously and purposefully, with intent and the full knowledge of the requirements and applicability of MCOCA, as a part of the adopted policy, practice and custom of Glenolden Borough with respect to U & O Certificates.

54.     Each of the Borough Officials and CCEI has had personal and direct involvement in enforcing the Ordinances, and knew or should have known that their enforcement of the Ordinances was contrary to MCOCA and would result in the violation of individual constitutionally protected rights, like Plaintiff eXp Realty's, or that, at the very least, their adoption of a practice and custom of unconstitutionally enforcing the Ordinances would set into motion a series of actions that will cause constitutional injury by, among other things, refusing to issue occupancy permits, and ultimately causing criminal citations to be filed.

## COUNT I — DECLARATORY JUDGMENT

55.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

56.     Plaintiffs are entitled to a declaration under 28 U.S.C. § 2201 of the Defendants' enforcement of the Ordinances, and Plaintiffs' rights in connection therewith.

57.     The Ordinances of Glenolden Borough, as set forth herein, are unconstitutional as applied, in that they: (i) act to deprive Plaintiff eXp Realty, SRA's

Members and all property owners in Glenolden Borough of their constitutional rights to due process and constitutionally protected property rights in their property in violation of their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution and Article 1 § 1 of the Pennsylvania Constitution, (iii) unreasonably interfere with Plaintiff eXp Realty's and SRA's members constitutionally protected liberty and property interests relating to their licenses to sell real estate issued by the Commonwealth of Pennsylvania by imposing unconstitutional requirements on them and their customers, inhibiting sales and the free transfer of real estate, without any concomitant benefit to the municipality.

58.    Defendants' enforcement of the Ordinances, taken under color of state law, have been consciously and intentionally undertaken for the purpose of depriving Plaintiff eXp Realty and SRA's members of their constitutional rights with full knowledge of the fact that their actions are wrongful under the Ordinances themselves and MCOCA, which governs Glenolden Borough's and all Pennsylvania municipalities' authority in connection with the issuance of occupancy permits.

59.    Likewise, Defendants' enforcement of its Ordinances, taken under color of state law, have been consciously undertaken with disregard for the constitutional rights of the other property owners in Glenolden Borough, Plaintiff eXp Realty and the members of SRA, with full knowledge of the fact that their actions are wrongful under MCOCA.

19

## COUNT II — INJUNCTIVE RELIEF

60.     Plaintiffs incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

61.     Defendants' unconstitutional enforcement of the Ordinances, violate the express statutory provisions of MCOCA, and which are taken under color of state law, constitute per se irreparable harm.

62.     Likewise, Defendants' enforcement of the Criminal Citation, also undertaken under color of state law, will cause irreparable harm to Plaintiff eXp Realty, for which damages are inadequate remedy as a matter of law.

63.     Specifically, if Glenolden Borough is permitted to prosecute the Criminal Citation against Plaintiff eXp Realty, it would be deprived of the benefits of its license in direct contravention of his rights under the United States Constitution, the Pennsylvania Constitution and Pennsylvania law and its reputation will be damaged.

64.     In the absence of immediate relief from this Court, Defendants will continue to enforce the Ordinances in direct violation of the Ordinances themselves and MCOCA and, abridge the rights of the members of SRA and their clients, as well as all other citizens who own property in Glenolden Borough.

65.     Plaintiffs have a substantial likelihood of success on the merits of their constitutional claims and preventing any deprivation of constitutional rights, and for

this reason, the public interest weighs in favor of Plaintiffs and against Defendants in their attempt to enforce unconstitutional Ordinances.

66.     Plaintiff eXp Realty is entitled to preliminary injunctive relief and/or a temporary restraining order staying or dismissing the proceedings in the Magisterial District Court in Glenolden Borough on the Criminal Citation.

67.     Likewise, Plaintiffs are entitled to an order permanently enjoining Defendants, and their employees, agents and representatives, as well as any and all municipalities that receive actual or constructive notice of this Court's decision from enforcing any ordinance in any way that is contrary to, violates or conflicts with MCOCA.

## COUNT III — Violations of 42 U.S.C. §1983

68.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

69.     The Fourteenth Amendment provides that: "[n]o state shall make or enforce any law which shall abridge the privileges and immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

70.     Article I of the Pennsylvania Constitution provides in relevant part:

§ 1. All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness.

§ 11. All courts shall be open; and every man for an injury done to him in his lands, goods, person or reputation shall have a remedy by due course of law, and right and justice administered without sale, denial or delay....

71.    Defendants' unconstitutional enforcement of the Ordinances and Defendants' intentional failure to enforce the Ordinances that incorporate MCOCA's protections are both patently irrational and unrelated to any legitimate interest, and therefore are in violation of Plaintiffs' substantive due process and equal protection rights under the Fourteenth Amendment and the Pennsylvania constitution.

72.    Likewise, Defendants' utilization of criminal proceedings to unconstitutionally enforce the Ordinances deprives real estate agents like Plaintiff eXp of their rights and jeopardizes their liberty interests in being free from unconstitutional prosecutions.

73.    Further, Defendants' illegally forcing Plaintiff eXp Realty to defend itself against the baseless Criminal Citation deprives it of its liberty interests inasmuch as any failure to respond to the Criminal Citation subjects it to further penalties.

74.    Defendants' actions also deprives Plaintiff eXp Realty and SRA's members who are licensed real estate professionals from the rights afforded to them under MCOCA, violating their procedural due process rights.

75.     In enforcing the Ordinances in ways they know to be unconstitutional under Pennsylvania state law, Glenolden Borough and the Borough Officials are denying individuals, such as Plaintiff eXp Realty, their legal and long-standing federal and state constitutional rights, including, but not limited to, their substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution, the analogous provisions under the Pennsylvania Constitution.

76.     The actions of Glenolden Borough and the Defendants in abrogating Plaintiffs' rights are deliberate, arbitrary, irrational, and exceed the limits of governmental authority, constitute an abuse of official power, and shock the conscience.

77.     Moreover, the actions of Glenolden Borough and the Defendants reflect the sustained abuse of power for multiple years over the property owners of Glenolden and the licensed professionals that rely upon the sale and purchase of property in Glenolden, which based upon their intentional disregard for MCOCA dating back to 2017, shocks the conscience.

78.     The Ordinances provide for no process or procedure which could be utilized by Plaintiffs to challenge its enforcement which is in clear violation of MCOCA and the Ordinances themselves.

79.     Defendants' enforcement of the Ordinances inhibit Plaintiffs and SRA members from representing homeowners within Glenolden Borough inasmuch as they

will never know when Defendants will arbitrarily issue Criminal Citations against them with respect to U & O Certificates.

80.     Defendants' enforcement of the Ordinances likewise deters other residents and potential residents from engaging in the transfer of property within Glenolden Borough inasmuch as they will never know when Defendants will arbitrarily issue Criminal Citations against them with respect to U & O Certificates or impose other arbitrary requirements that are contrary to the Ordinances and MCOCA, despite the fact that they are in direct violation of both.

## COUNT IV — Preemption

81.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

82.     Municipalities in the Commonwealth of Pennsylvania do not possess broad police powers. Rather, they possess only such powers that have been granted to them by the Pennsylvania General Assembly.

83.     Consequently, any authority of Glenolden Borough to regulate the issuance of use and occupancy permits must originate from the Pennsylvania General Assembly and can be abridged by that legislative body.

84.     Through MCOCA, the Pennsylvania General Assembly intended to regulate municipalities' issuance, refusal to issue, restriction and enforcement of

occupancy permits in connection with the sale of property in the Commonwealth of Pennsylvania.

85.     Defendants' enforcement of the Ordinances is in direct conflict with MCOCA and the Ordinances.

86.     Defendants' enforcement of the Ordinances, obstruct and effectively frustrate the essential purpose of MCOCA, which is to allow property owners to obtain occupancy permits necessary to sell their property, while delaying any repairs necessary to bring their property into conformance with the local building and construction codes until after the sale.

87.     As such, MCOCA' s purpose was necessarily to abridge and preempt the authority of municipalities like Glenolden Borough to issue, restrict and enforce any municipal code provisions or ordinances relating to occupancy permits that are contrary to the explicit provisions of MCOCA.

## COUNT V – Interference With Prospective Contractual Relationships

88.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

89.     Plaintiff eXp Realty entered into an agreement to list the Property for sale in Glenolden Borough, currently have listing agreements in Glenolden Borough and will have listing agreements in Glenolden Borough.

90.     Defendants refused to issue the appropriate certificate of occupancy as required by MCOCA following its inspection of the Property.

91.     Defendants, more than a year after the sale of the Property, then caused Criminal Citation to be issued to Plaintiff eXp Realty in direct contravention of MCOCA and the Ordinances.

92.     Likewise, Defendants' enforcement of the Ordinances that are contrary to MCOCA and the Ordinances constitutes interference with the prospective contractual rights of SRA members in their representation of Glenolden homeowners, as described herein, causing financial losses to Plaintiff eXp Realty and potentially to SRA's members.

93.     Defendants' actions, whether intentional or negligent, have resulted and will result in economic harm and constitute an impingement upon Plaintiff eXp Realty's and SRA's members right to freely represent home sellers and contract for such listing rights in Glenolden Borough.

**COUNT VI – CONSPIRACY - Violations of 42 U.S.C. § 1985 & Pennsylvania common law**

94.     Plaintiffs hereby incorporate the foregoing paragraphs of this Complaint as if the same are fully set forth at length herein.

95.     Defendants engaged in a conspiracy to deprive Plaintiffs of their substantive and procedural due process rights and equal protections of the privileges afforded to other Pennsylvania residents under MCOCA.

96.     Defendants' individual and concerted efforts in further of such conspiracy are detailed herein.

97.     Plaintiffs' injuries arising from Defendants' conspiracy include Plaintiff eXp Realty's requirement that it defend itself against unfounded criminal charges, and the untold loss of time and money incurred by Plaintiff eXp Realty and other SRA members in connection with unconstitutional enforcement of the Ordinances.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendants as follows:

a.     A declaration that the Ordinances § 61-1 through § 61-9 have been unconstitutionally enforced and applied against Plaintiff eXp Realty, in violation of the Ordinances themselves and in violation of MCOCA, as well as;

b.     A declaration that MCOCA pre-empts and invalidates Glenolden Borough's enforcement of its municipal codes with respect to occupancy permits, as well as the occupancy permit provisions of any municipality's code or ordinances to the extent inconsistent with MCOCA and the Ordinances;

c.     A temporary restraining order, preliminary injunction and permanent injunction restraining Glenolden Borough and any officers, agents, employees, representatives, and all other persons acting by, through or for it, from enforcing, applying and/or implementing Chapter 61 of the Glenolden Borough Municipal Code in such a way that violates the Ordinances or MCOCA;

d.     A temporary restraining order, preliminary injunction and permanent injunction enjoining the enforcement by any municipality its code or ordinances that are not co-extensive with

27

MCOCA, do not otherwise incorporate MCOCA's protections and restrictions or do not comply with MCOCA;

e.    A Temporary restraining and/or injunction dismissing or enjoining any further proceedings in Magisterial Justice case MJ-32242-NT-0000303-2023, absent further order of this Court;

f.    An award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

g.    An award of all such other and further relief as the Court may determine is appropriate, just and proper.


**CONNOR, WEBER & OBERLIES**


Dated: <u>November 3, 2023</u>

*/s/ Monica M. Reynolds*

_____

William J. Weber, Jr., Esquire
Monica M. Reynolds, Esquire
Patrick T. Casey, Esquire
Atty ID Nos. 33137, 86616, 93985
171 West Lancaster Avenue Paoli, Pennsylvania 19301
Telephone: (610) 640-2800
wweber@cwolaw.com
mreynolds@cwolaw.com
pcasey@cwolaw.com
*Attorneys for Plaintiffs*