**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **eXp REALTY, LLC and SUBURBAN REALTORS ALLIANCE** <br><br> **v.** <br><br> **BOROUGH OF GLENOLDEN, BRIAN RAZZI, ANTHONY TARTAGLIA, and COMMONWEALTH CODE ENFORCEMENT, INC.** | **CIVIL ACTION** <br><br> **NO. 23-4287** |

**MEMORANDUM RE: MOTION TO DISMISS**

Baylson, J.                                                                April 25, 2024

Plaintiffs eXp Realty and Suburban Realtors Alliance (collectively, "Plaintiffs") filed suit against Defendants Borough of Glenolden, Brian Razzi, Anthony Tartaglia, and Commonwealth Code Enforcement, Inc. ("Commonwealth Code Enforcement") for injunctive and declaratory relief. Plaintiffs challenge the purportedly unconstitutional application of Glenolden Borough Municipal Code and Ordinance § 61 ("the Ordinances"), and seek to enjoin enforcement of the Ordinances in any way that is inconsistent with the Municipal Code and Ordinance Compliance Act of the Commonwealth of Pennsylvania ("MCOCA"), 68 P.S. § 1082.1, *et seq*.

Before this Court is Defendants Borough of Glenolden and Brian Razzi's Motion to Dismiss (1) Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) and (2) Plaintiff Suburban Realtors Alliance ("SRA") due to lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1), as well as Defendants Anthony Tartaglia and Commonwealth Code Enforcement's Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 16, 26. For the reasons stated below, Defendants Borough of

Glenolden and Brian Razzi's Motion to Dismiss Plaintiff SRA will be denied, and Defendants'

Motions to Dismiss Plaintiffs' Complaint for failure to state a claim will be granted.

## I.      FACTS

The facts in this case, as alleged in the Complaint, are as follows.  In 2016, the Pennsylvania

Legislature enacted MCOCA to address both the non-uniformity of municipalities' code

provisions relating to occupancy permits and municipalities' arbitrary enforcement of those code

provisions.  Compl. ¶ 13.  MCOCA requires that municipalities issue one of three types of

occupancy certificate when requested by a homeowner and specifies the types of certificates that

municipalities must issue in certain situations.  Id. ¶ 14.  In 2019, Glenolden Borough amended its

Ordinances to comply with MCOCA.  Id. ¶¶ 16-18.  The Ordinances require that:

> No person, unless otherwise excepted by Pennsylvania law or § 61-5 below, shall occupy
> any lot or portion of any lot, dwelling, dwelling unit, building, building unit….in the
> Borough of Glenolden, and no person owning any dwelling, dwelling unit, lot, building,
> building unit….shall lease, rent or allow such dwelling, dwelling unit, lot or any portion of
> such lot, building, building unit…to be occupied by another without each first making
> application to and obtaining from the Borough Council or its designated agent a certificate
> of occupancy for such dwelling, dwelling unit, lot or portion of lot, building, building
> unit…

> Ordinance § 61-2.1A.

Consistent with MCOCA, the Ordinances establish how an owner preparing to sell his or

her property obtains a Use and Occupancy Certificate ("U & O Certificate").  Compl. ¶¶ 20-24.

> Owners of existing structures that do not have a valid use and occupancy certificate shall
> complete an application for use and occupancy certificate, pay the applicable fees and
> schedule an inspection with the Code Official or its designee.

> Ordinance § 61-2.1C.

The Ordinances require, after the inspection, that the Borough issue the appropriate

certificate.  Compl. ¶ 21.

> The Borough of Glenolden Borough shall issue certificates in the following manner:

    A.  If the Borough inspection reveals no deficiencies or violations a use and occupancy certificate will be issued.

    B.  If the Borough inspection reveals at least one deficiency or violation, but no substantial violations, the Borough will issue a temporary use and occupancy certificate.

    C.  If the Borough inspection reveals at least one substantial violation, the Borough will specifically note those substantial violations on the inspection report and will issue a temporary access certificate.

    D.  Any deficiencies, violations or substantial violations revealed by an inspection shall be identified by the Borough, in writing, and shall accompany the certificate that is issued.

Ordinance § 61-3.  Consistent with MCOCA, the Ordinances also (1) provide a time frame in which the seller (or the buyer after the purchase) must make required repairs and (2) set forth the potential penalties for failure to comply with the certificate of occupancy requirements.  Compl. ¶¶ 22-24.

On or about March 11, 2022, George Kiesel (the "Seller") of 115 E. Lamont Avenue, Glenolden, PA 19036 (the "Property") entered into an agreement for sale of the Property with a purchaser.  Id. ¶ 32.  Plaintiff eXp Realty represented the Seller in connection with the sale and Plaintiff eXp Realty, through its affiliated agent, applied for inspection of the Property for the purpose of obtaining a U & O Certificate. Id. ¶¶ 33-34.  On April 19, 2022, the Commonwealth Code Enforcement, on behalf of Glenolden Borough, inspected the Property and noted that certain repairs were required.  Id. ¶ 36.  The inspection also included a requirement of re-inspection within 30 days.  Id. After the inspection, Defendants did not issue any type of occupancy certificate to Plaintiff eXp Realty on behalf of the Seller even though MCOCA requires that—at a minimum— a temporary occupancy certificate be issued so that the Seller could be permitted to sell the property with the repairs to occur after the sale.  Id. ¶¶ 36-37.

On April 29, 2022, ten days after the inspection uncovered required repairs, the Property was sold without any U & O Certificate and without the repairs being made.  Compl. ¶ 38.  On May 19, 2023, Defendant Tartaglia, acting through or in conjunction with Commonwealth Code Enforcement and Glenolden Borough, filed a criminal citation against Plaintiff eXp Realty for failing to obtain a certificate of occupancy prior to selling the Property.  Id. ¶ 39.  This criminal citation charges Plaintiff eXp Realty with "Transfer w/o Certificate of Occupancy" and imposes a potential fine of $256.19.  Id. ¶ 39-40.  The Magisterial District Court in Glenolden Borough then scheduled a hearing on the Criminal Citation for November 6, 2023.  Id. ¶ 43.  Plaintiffs allege that the issuance of the Criminal Citation to Plaintiff eXp Realty is in direct violation of MCOCA and attempts to extend criminal penalties for the failure to have a U & O Certificate to Plaintiff eXp Realty, which never owned real estate in Glenolden Borough.  Id. ¶ 45.  Plaintiffs also allege that the Borough Officials were obligated to issue a U & O Certificate under the Ordinances and MCOCA when the inspection was performed but refused to do so.  Id. ¶ 49.

## II.     PROCEDURAL HISTORY

Plaintiffs filed their Complaint on November 3, 2023, bringing the following six claims against all Defendants:

a.   Count I – Declaratory Judgment, 28 U.S.C. § 2201;

b.   Count II – Injunctive Relief;

c.   Count III – Violations of 42 U.S.C. § 1983;

d.   Count IV – Preemption;

e.   Count V – Interference with Prospective Contractual Relationships;

f.   Count VI – Conspiracy, Violations of 42 U.S.C. § 1985 & Pennsylvania Common Law.

4

ECF No. 1.  Proceeding on these six theories, Plaintiffs request relief in the form of:

    a.   A declaration that the Ordinances § 61-1 through § 61-9 have been unconstitutionally enforced and applied against Plaintiff eXp Realty, in violation of the Ordinances themselves and in violation of MCOCA, as well as;

    b.   A declaration that MCOCA pre-empts and invalidates Glenolden Borough's enforcement of its municipal codes with respect to occupancy permits, as well as the occupancy permit provisions of any municipality's code or ordinances to the extent inconsistent with MCOCA and the Ordinances;

    c.   A temporary restraining order, preliminary injunction and permanent injunction restraining Glenolden Borough and any officers, agents, employees, representatives, and all other persons acting by, through or for it, from enforcing, applying and/or implementing Chapter 61 of the Glenolden Borough Municipal Code in such a way that violates the Ordinances or MCOCA;

    d.   A temporary restraining order, preliminary injunction and permanent injunction enjoining the enforcement by any municipality its code or ordinances that are not co-extensive with MCOCA, do not otherwise incorporate MCOCA's protections and restrictions or do not comply with MCOCA;

    e.   A Temporary restraining and/or injunction dismissing or enjoining any further proceedings in Magisterial Justice case MJ-32242-NT- 0000303-2023, absent further order of this Court;

    f.   An award of reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

    g.   An award of all such other and further relief as the Court may determine is appropriate, just and proper.

Compl. at 27.

On November 3, 2023, Plaintiffs filed a Motion for Temporary Restraining Order and Preliminary Injunction.  ECF No. 2.  On November 8, 2023, Plaintiffs filed a Notice of Withdrawal of their Motion for Temporary Restraining Order and Preliminary Injunction without Prejudice. ECF No. 7.

On January 2, 2024, Defendants Borough of Glenolden and Brian Razzi filed a Motion to Dismiss Plaintiffs' Complaint and Plaintiff SRA (due to lack of standing) pursuant to Federal

Rules of Civil Procedure 12(b)(1) and (6). ECF No. 16. Plaintiffs filed a Response on January 30, 2024. ECF No. 19.

On February 13, 2024, the Clerk of Court issued an entry of default against Defendants Anthony Tartaglia and Commonwealth Code Enforcement pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 21. That same day, two attorneys entered notices of appearance on behalf of Defendants Tartaglia and Commonwealth Code Enforcement. ECF Nos. 22-25. On April 17, 2024, Defendants Tartaglia and Commonwealth Code Enforcement filed a Motion to Dismiss Plaintiffs' Complaint, moving to join the motions of co-Defendants Borough of Glenolden and Razzi as applied to Defendants Tartaglia and Commonwealth Code Enforcement, and identifying additional issues in favor of granting dismissal. ECF No. 26.

### III.   PARTIES' CONTENTIONS

#### A. Standing of Suburban Realtors Alliance

Defendants argue that Plaintiff Suburban Realtors Alliance ("SRA") should be dismissed as a party pursuant to Federal Rule of Civil Procedure 12(b)(1) because Plaintiff SRA has failed to allege any damage that is common to its members, or has been widely suffered by its members, and because SRA member Plaintiff eXp Realty is already a party to this matter. ECF No. 16-1 at 15.

Plaintiffs respond that Plaintiff SRA has associational standing based upon Plaintiff eXp Realty's injury in fact, regardless of whether eXp Realty is already a party to this matter. ECF No. 19-1 at 4. Plaintiffs argue that Plaintiff SRA's purpose is to advance and protect the interests of Realtors and their clients in connection with the sale and purchase of real estate and that Plaintiff SRA's requested relief does not require the participation of individual members of the organization. Id. at 3.

### B.  Procedural Due Process Claim

Defendants argue that Plaintiffs' factual allegations show that they have been afforded procedural due process and therefore, their procedural due process claims should be dismissed. ECF No. 16-1 at 13.  Defendants claim that Section 1083 of MCOCA, which Defendant Glenolden Borough has mirrored in its own ordinance at § 61-6, provides means by which an impacted party may obtain the desired permit once it is denied.  Id. at 11.  Defendants argue that Plaintiffs did not avail themselves of the protections available under the Ordinances: Plaintiffs did not correct the violations identified by Defendants or request re-inspection or an extension of time to comply, rather, they sold the property ten days after the inspection without any certificate of occupancy. Id. at 12-13.  Further, Defendants argue that the proceeding before the magisterial district judge affords Plaintiffs an opportunity to be heard and therefore procedural due process.  Id. at 12.

In response, Plaintiffs assert that they have protected liberty and property interests relating to their licenses to sell real estate issued by the Commonwealth of Pennsylvania as well as their right to be free from arbitrary criminal proceedings.  ECF No. 19-1 at 9-11.  Plaintiffs assert that although Plaintiff eXp Realty has the right to challenge this instance of Defendants' application of the Ordinances in the magisterial district court proceedings, they have no venue or process to challenge Defendants' overbroad application of the Ordinances in the future because they are not property owners that are subject to the Ordinances.  ECF No. 19-1 at 9-10.[1]

### C.  Substantive Due Process Claim

---

[1] In support of this assertion, Plaintiffs argue that Defendants previously filed criminal citations against realtors for failing to acquire a U & O Certificate prior to sale, but that Defendants ultimately withdrew the criminal citations prior to the magisterial district court hearing, and Plaintiffs therefore had no means of challenging Defendants' efforts to hold them criminally responsible for a property owners' failure to obtain a U & O certificate.  ECF No. 19-1 at 10, n. 4.  Because this Court only considers actual cases or controversies that are (1) not moot and (2) ripe for consideration, it will not address Plaintiff's allegations with respect to previously withdrawn criminal citations and applications of the Ordinances anticipated to occur in the future.

Defendants assert that Plaintiffs have failed to allege any facts which shock the conscience and therefore, their substantive due process claims should be dismissed.  ECF No. 16-1 at 10. Defendants argue that their actions—requiring repair and re-inspection of the Property prior to issuing a certificate—were in response to a perceived violation of their Code by the applicant for the certificate of occupancy, and that these actions do not constitute a substantive due process violation.  Id.

Plaintiffs counter that their Complaint sufficiently alleges outrageous or shocking behavior by Defendants, as required for a substantive due process claim, including Defendants' "overbroad and illegal enforcement of MCOCA and the Ordinances." ECF No. 19-1 at 15.

### D.  Equal Protection Claim

Defendants argue that Plaintiffs cannot make a claim under the Equal Protection Clause because they have not alleged that they have been treated differently from others similarly situated. ECF No. 16-1 at 13.

Plaintiffs respond that they do not intend to assert that their § 1983 claims are based on equal protection, and to the extent Plaintiffs' Complaint does so, those portions of Plaintiffs' claims are withdrawn.  ECF No. 19-1 at 2, n.3.  Since Plaintiffs concede that their Complaint does not set forth a cognizable claim under the Equal Protection Clause and since Plaintiffs withdraw this portion of their claim, it will not be considered in this Court's analysis below.

### E.  State Tort Claims

Defendants argue that this Court should dismiss Plaintiffs' state tort claims for (1) interference with prospective contractual relationships (Count V) and (2) Pennsylvania common law for civil conspiracy (Count VI) because Defendants are immune from tort liability under

Pennsylvania's Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.C.S.A. § 8541, and none of the exceptions to immunity under 42 Pa.C.S.A. § 8542(b) apply here.  ECF No. 16-1 at 3-5.

In response, Plaintiffs concede that Defendant Glenolden Borough is immune from the tortious interference claim and common law civil conspiracy claim based on the tortious interference claim.  ECF No. 19-1 at 7-8.  However, Plaintiffs argue that Defendant Razzi is not immune from liability because he acted on an individual basis, and he acted intentionally and purposefully in interfering with their contractual relations and depriving them of their due process rights.  Id. at 6-7.

## IV.    LEGAL STANDARD[2]

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a plaintiff must include sufficient facts in the complaint that, accepted as true, "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint is insufficient if it suggests only the "mere possibility of misconduct" or is a "[t]hreadbare recital[] of the elements of a cause of action, supported by mere conclusory statements,"  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009) (citing Twombly, 550 U.S. at 555), and so it will not suffice if it is "devoid of further factual enhancement," Iqbal, 556 U.S. at 678 (citation omitted).  Thus, in considering a motion to dismiss, the Court accepts all factual allegations as true and views them in a light most favorable to the plaintiff, Doe v. Univ. of the Scis., 961 F.3d 203, 208 (3d Cir. 2020), but may not "assume that [the plaintiff] can prove facts that [she] has not alleged[,]" Twombly, 550 U.S. at 563 n.8 (citing Associated Gen. Contractors of Cal. Inc. v. Carpenters, 459 U.S. 519, 526 (1983)).

---

[2] In addition to a Rule 12(b)(6) motion to dismiss for failure to state a claim, Defendants also bring a Rule 12(b)(1) motion to dismiss Plaintiff SRA for lack of associational standing.  Defendants' Rule 12(b)(1) motion is discussed infra under heading, "Standing of Suburban Realtors Alliance."

## V.     DISCUSSION

### A.  Default Against Defendants Tartaglia and Commonwealth Code Enforcement

Notwithstanding Defendant Tartaglia and Commonwealth Code Enforcements' delinquent Motion to Dismiss, this Court finds good cause to vacate the default entered against these two defendants.  See Barel v. Judiciary Courts of New Jersey, 2020 WL 603993, at *2 (D.N.J. Feb. 7, 2020) (sua sponte vacating the defaults entered against two defendants upon finding of good cause).

"As a general matter, this court does not favor default judgments and in a close case, doubts should be resolved in favor of setting aside the default and reaching the merits." Zawadski de Bueno v. Bueno Castro, 822 F.2d 416, 419-20 (3d Cir. 1987)).  In deciding whether to vacate an entry of default, courts consider three factors:

(1) whether the plaintiff will be prejudiced if the default is lifted;

(2) whether the defendant has a meritorious defense; and

(3) whether the default was the result of the defendant's culpable conduct.

Id.  Here, the factors weigh in favor of vacating the entry of default.  First, there is no prejudice to Plaintiffs.  "The question of prejudice, when determining whether to vacate a default, concerns the loss of available evidence, whether there is increased potential for collusion or fraud, and whether the plaintiff substantially relied upon the default." Clauso v. Glover, 2010 WL 3169597, at *1 (D.N.J. Aug. 11, 2010) (citing Feliciano v. Reliant Tooling Co. Ltd., 691 F.2d 653, 657 (3d Cir. 1982)).  At this early stage in the proceedings, there is no indication that there has been any loss of available evidence or increased potential for collusion or fraud, or that Plaintiffs substantially relied upon the default.

Second, Defendants Anthony Tartaglia and Commonwealth Code of Enforcement have a meritorious defense because they adopt the Motion to Dismiss of Defendants Borough of Glenolden and Razzi, which this Court finds, for the reasons stated below, should be granted.

With respect to the third factor—whether the default was the result of defendant's culpable conduct— culpable conduct means "actions taken willfully or in bad faith." Gross v. Stereo Component Sys., Inc., 700 F.2d 120, 123-24 (3d Cir. 1983).  To establish culpable conduct, "[m]ore than mere negligence must be shown." Jackson v. Delaware Cty., 211 F.R.D. 282, 284 (E.D.Pa. 2002) (Baylson, J.) (quoting Hritz v. Woma Corp., 732 F.2d 1178, 1183 (3d Cir. 1984)).

Here, it is possible, but by no means conclusive, that the default was the result of the defendant's culpable conduct.  However, even if a showing of culpable conduct could be made, this Court is persuaded that vacating the entries of default is appropriate in view of the absence of prejudice to Plaintiff and the existence of a meritorious defense.  See Hritz v. Woma Corp., 732 F.2d 1178, 1188 (3d Cir. 1984) (Garth, I., concurring) ("[T]his court's overriding preference is the disposition of litigated matters on the merits rather than by default—and to this extent we encourage liberality in vacating default judgments…."); Bailey v. United Airlines, 279 F.3d 194, 204 (3d Cir. 2002) ("A decision to set aside an entry of default pursuant to Fed. R. Civ. P. 55(c) is left primarily to the discretion of the district court.").

For these reasons, this Court will vacate the entries of default against Defendants Tartaglia and Commonwealth Code of Enforcement and proceed with an evaluation of this case on the merits.  Defendants Tartaglia and Commonwealth Code of Enforcement both move to join the Motion to Dismiss of their co-Defendants and set forth additional reasons for which they argue dismissal of the claims against them is proper.  Since, for the reasons provided below, this Court's evaluation of Defendants Borough and Razzi's Motion to Dismiss as applied to Defendants

Tartaglia and Commonwealth Code of Enforcement is dispositive, it need not consider the additional arguments favoring dismissal offered by Defendants Tartaglia and Commonwealth Code of Enforcement.

### B.  Standing of Suburban Realtors Alliance

In ruling on a motion to dismiss for lack of standing, the district court must accept as true all material allegations of the complaint and must draw all reasonable inferences in favor of the plaintiff.  Warth v. Seldin, 422 U.S. 490, 501 (1975).  The plaintiff bears the burden of establishing that it meets the required elements of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

In Hunt v. Wash. State Apple Adver. Comm'n, the Supreme Court set forth a three-factor test to determine whether associational standing is appropriate.  432 U.S. 333, 343 (1977).  This test requires the association in question to show that each of the following is true:

(a) its members would otherwise have standing to sue in their own right;

(b) the interests it seeks to protect are germane to the organization's purpose; and

(c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

Id.  The first Hunt prong requires the association to have "at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association."  United Food & Com. Workers Union Local 751 v. Brown Grp., Inc., 517 U.S. 544, 555 (1996).  Therefore, this Court begins with an analysis of the standing of Plaintiff eXp Realty, a member of Plaintiff SRA and the co-Plaintiff in this case.

In order for Plaintiff eXp Realty to have standing, it must meet three requirements:

First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the

conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-561 (1992) (internal quotations and citations omitted). In assessing whether an individual plaintiff has met this burden, the court "separate[s] [its] standing inquiry from any assessment of the merits of the plaintiff's claims." Cottrell v. Alcon Labs., 874 F.3d 154, 162 (3d Cir. 2017). To maintain this separation at the dismissal stage, the court "assume[s] for the purposes of [its] standing inquiry that a plaintiff has stated valid legal claims." Id.

Here, Plaintiff eXp Realty alleges that is suffered a "concrete and particularized injury that is actual and imminent, fairly traceable to the defendants, and redressable by the relief sought herein." Compl. ¶ 5. Plaintiff eXp Realty alleges that Defendants' issuance of the Criminal Citation to Plaintiff eXp Realty is in direct violation of MCOCA and attempts to extend criminal penalties for the Seller's failure to have a U & O Certificate to Plaintiff eXp Realty. Compl. ¶ 45. Plaintiff eXp Realty alleges that this violation is redressable by a declaration from this Court.

Defendants do not challenge individual Plaintiff eXp Realty's standing to bring this action. Rather, Defendants argue, without citation to any relevant case law, that since (1) Plaintiffs have not alleged that any other members of Plaintiff SRA have standing and (2) Plaintiff eXp Realty as a party in this case does not require Plaintiff SRA to act in its stead, Plaintiff SRA does not have associational standing. ECF No. 16 at 14. But associational standing only requires that an organization suing as representative "include at least one member with standing to present, in his or her own right, the claim (or the type of claim) pleaded by the association," and here, Plaintiff eXp Realty has alleged an injury in fact which Defendant does not contest. United Food & Com.

13

Workers Union Local 751, 517 U.S. at 555.  Therefore, Plaintiffs have adequately met the first Hunt prong.

The second Hunt prong states that the interests being protected by the lawsuit must be germane to the association's purpose.  Hunt, 432 U.S. at 343.  Plaintiffs allege that Plaintiff SRA protects the interests of realtors in connection with the sale and purchase of real estate, including by advocating for the standard application of local code provisions regarding use and occupancy permits.  Compl. ¶ 4.  Plaintiffs have satisfied the second Hunt prong.

The third Hunt prong, which requires that neither the claim asserted nor the relief requested necessitate the participation of individual members in the lawsuit, is a "prudential judicially self-imposed limit for administrative convenience and efficiency."  Free Speech Coal., Inc. v. Att'y Gen. United States, 974 F.3d 408, 421 (3d Cir. 2020) (internal citations omitted).  "Individual participation by an association's membership may be unnecessary when the relief sought is prospective."  Penn. Psychiatric Soc. v. Green Spring Health Servs., Inc., 280 F.3d 278, 284 n. 3 (3d Cir. 2002); see also Hosp. Council of W. Pennsylvania v. City of Pittsburgh, 949 F.2d 83, 89 (3d Cir. 1991) ("The Supreme Court has repeatedly held that requests by an association for declaratory and injunctive relief do not require participation by individual association members."). However, conferring associational standing is "improper for claims requiring a fact-intensive-individual inquiry."  Penn. Psychiatric Soc., 280 F.3d at 286; see also Blunt v. Lower Merion Sch. Dist., 767 F.3d 274, 290 (finding that the highly individualized components of the plaintiffs' claims required individual participation in this lawsuit).

Here, Plaintiffs are seeking injunctive and declaratory relief, not individual damages, which weighs in favor of a finding of associational standing under the third prong of the Hunt test. Compl. ¶ 1-2.  Whether the claims at issue require a fact-intensive individual inquiry—such that

associational standing is inappropriate—is a closer call.  Some of Plaintiffs' requests for relief relate specifically to Plaintiff eXp Realty's individualized claims, such as Plaintiffs' request to stay or dismiss the proceedings in the Magisterial District Court in Glenolden Borough against Plaintiff eXp Realty.  Compl. ¶ 66.  Others, however—such as Plaintiffs' request for a declaration that MCOCA preempts and invalidates Glenolden Borough's enforcement of its municipal codes with respect to occupancy permits—are more generalized requests for relief that may not require the participation of individual members in the lawsuit.

At this early stage of litigation, and upon review of the Complaint, this Court is reluctant to conclude that Plaintiff SRA lacks associational standing.  See Penn. Psychiatric Soc., 280 F.3d at 286 ("[A]t this stage of the proceedings on a motion to dismiss for lack of standing, we review the sufficiency of the pleadings and "must accept as true all material allegations of the complaint and must construe the complaint in favor of the plaintiff").

This Court next turns to an evaluation of Plaintiffs' claims on the merits.

### C.  Count II – Injunctive Relief

In Count II of their Complaint, Plaintiffs allege that they are entitled to both preliminary and permanent injunctive relief and request that this Court (1) stay or dismiss the proceedings in the Magisterial District Court in Glenolden Borough and (2) issue an order enjoining Defendants as well as "any and all municipalities that receive actual or constructive notice of this Court's decision from enforcing any ordinance in any way that is contrary to, violates or conflicts with MCOCA."  Compl. ¶¶ 60-67.

In Rahman v. Borough of Glenolden—where the Plaintiffs brought a nearly identical claim for injunctive relief requesting that the state court criminal action be enjoined—the district court declined to intervene in the pending criminal action against the Plaintiff based on the Younger

abstention doctrine. 2020 WL 1676399, at *9 (E.D. Pa. Apr. 6, 2020).   The Court in <u>Rahman</u>

explains:

> For the <u>Younger</u> abstention doctrine to apply, three conditions must be satisfied: (1) state-court proceedings must be ongoing and judicial in nature; (2) the state-court proceedings must implicate important state interests; and (3) those proceedings must afford an adequate opportunity to raise federal claims.  See <u>Lazaridis v.</u> Wehmer, 591 F.3d 666, 670 (3d Cir. 2010).  If all three prongs of the <u>Younger</u> analysis are met, federal courts should abstain unless there is a showing of "bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate."  <u>Middlesex Cnty. Ethics Comm.</u>, 457 U.S. 423, 435 (1982).

<u>Id</u>.  The Court in <u>Rahman</u> found that all three prongs of the <u>Younger</u> test were met and found that

the Plaintiffs failed to plead facts to establish that the prosecution of Plaintiff Rahman was brought

in bad faith or with the intent to harass.  The Court noted that there was no question that a criminal

state court proceeding in Magisterial District Court had been instituted against Plaintiff Rahman,

the proceeding implicated important local government interests, and the proceeding provided

Plaintiff Rahman with procedural and substantive due process protections.  This Court finds that

the same logic applies here.

Here, Defendants' criminal citation initiated a state court proceeding against Plaintiff eXp

Realty.   <u>See</u> <u>Commonwealth of Pa. v. EXP Realty</u>, MJ-32242-NT-0000303-2023.   Like the

proceeding in <u>Rahman</u>, the proceeding here implicates important state interests, principally, the

interest of the local government to manage the use and maintenance of the land within its

boundaries.  Furthermore, Plaintiff eXp Realty "will [presumably] have an opportunity to present

a defense and raise constitutional challenges to the enforcement of [the Ordinances] in Magisterial

District Court."  <u>Rahman</u>, 2020 WL 1676399, at *9.  Therefore, all three prongs of the <u>Younger</u>

abstention doctrine are satisfied and this Court should abstain from interfering with the pending

state proceeding unless there is a showing of "bad faith, harassment, or some other extraordinary

circumstance that would make abstention inappropriate."  <u>Middlesex Cnty.</u>, 457 U.S. at 435.

Plaintiffs' bare-bones allegations that Defendants brought the criminal proceeding "in bad faith" for the purpose of "harassing" Plaintiff eXp Realty – where Plaintiff eXp Realty sold the Property without first obtaining a certificate of occupancy, as required by the Ordinances and MCOCA – do not make such a showing here.  See Compl. ¶50.  Therefore, this Court declines to intervene in the pending criminal state court action that has been brought against Plaintiff eXp Realty.

Plaintiffs also ask this Court to issue an order enjoining Defendants and "any and all municipalities" from "enforcing any ordinance in any way that is contrary to, violates or conflicts with MCOCA."  Compl. ¶ 67.  This Court declines to address hypothetical enforcement issues that may arise in the future and limits its discussion in this memorandum to the actual case or controversy before it.

### D.  Count I- Declaratory Judgment and Count III (Violation of 42 U.S.C. § 1983)

In Counts I (Declaratory Judgment) and III (Violations of 42 U.S.C. § 1983) of their Complaint, Plaintiffs allege that Defendants deprived Plaintiffs of their substantive and procedural due process rights under the U.S. and Pennsylvania Constitutions in their enforcement of the MCOCA.

#### 1.  Procedural Due Process Claim

To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he or she was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property, and (2) the procedures available to him or her did not provide "due process of law."  Hill v. Borough of Kutztown, 455 F.3d 225, 233–34 (3d Cir. 2006).  "The focus in procedural due process claims is on the adequacy of the remedial procedure, and not on the government's actual actions that allegedly deprived the

individual of his liberty or property interest." <u>Giuliani v. Springfield Twp.</u>, 726 F. App'x 118, 122 (3d Cir. 2018) (internal citations omitted).

The first step in analyzing a procedural due process claim is "to determine whether the nature of the interest is one within the contemplation of the 'liberty or property' language of the Fourteenth Amendment." <u>Newman v. Beard</u>, 617 F.3d 775, 782 (3d Cir. 2010) (internal citations omitted). "Procedural due process does not protect every benefit; rather, to have a property interest in a benefit, a person must clearly have more than an abstract need or desire and more than a unilateral expectation of receiving the benefit." <u>Culinary Serv. of Delaware Valley, Inc. v. Borough of Yardley, Pa</u>, 385 F. App'x 135, 141 (3d Cir. 2010) (citing <u>Town of Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005)</u>). "A claimant must show an entitlement to a property interest created by a state statute or regulation or arising from government policy or a mutually explicit understanding." <u>Id</u>. The Fourteenth Amendment's protections also extend to liberty interests, including "the right to hold specific private employment and to follow a chosen profession free from unreasonable government interference." <u>Id.</u> (citing <u>Piechnick v. Pennsylvania</u>, 36 F.3d 1250, 1259 (3d Cir. 1994).

Here, Plaintiffs set forth in their complaint that Plaintiff eXp Realty never owned or occupied any property in Glenolden and never had any ownership interest in the Property at issue here. Compl. ¶¶ 31, 35. Plaintiffs allege that the Ordinances unreasonably interfere with their liberty and property interests "relating to their licenses to sell real estate issued by the Commonwealth of Pennsylvania by imposing unconstitutional requirements on them and their customers, inhibiting sales and the free transfer of real estate, without any concomitant benefit to the municipality." Compl. ¶ 57. In their Response to Defendants' Motion to Dismiss, Plaintiffs

argue that "it is undisputed that individuals have a property interest in a professional license which triggers procedural due process protections."  ECF 19 at 10.

However, the cases that Plaintiffs cite in support of their assertion that Plaintiff Exp Realty has a property interest in its professional license show that the <u>revocation</u> of a professional license constitutes a deprivation of a property interest, a fact pattern that is not present here.  <u>See</u> <u>Brunelle v. City of Scranton</u>, 2018 WL 4087558, at *9 (M.D. Pa. Aug. 3, 2018), <u>report and recommendation adopted,</u> 2018 WL 4052167 (M.D. Pa. Aug. 24, 2018) ("The revocation of his contractor's licenses by Hinton implicated a sufficient property interest to trigger some procedural due process protections."); <u>see also</u> <u>Telang v. Com. Bureau of Pro. & Occupational Affs.</u>, 751 A.2d 1147, 1151 (Pa. 2000) ("It is undisputed that Telang has a substantial property interest in his medical license and that the Commonwealth may not deprive him of that license without adequate due process.").  Here, Defendants have not deprived Plaintiff eXp Realty of this property interest because Plaintiff eXp Realty has not had their license suspended or revoked.  Further, Plaintiff eXp Realty was able to sell the Property even without Defendants issuing any U & O Certificate.  Compl. ¶ 38.  Plaintiffs have not alleged that Plaintiff eXp Realty is unable to continue using its license to sell properties, and therefore has not alleged a violation of its liberty interest in holding specific employment free from unreasonable government interference.

Additionally, to the extent Plaintiffs assert a procedural due process violation arising from the criminal citation Plaintiff eXP Realty received from Defendants, their argument is unavailing.  Plaintiffs' Complaint asserts factual allegations which show that procedural due process <u>is</u> in place.  Plaintiff eXp alleges that it received a criminal citation from Defendant Tartaglia, acting through or in conjunction with the Borough of Glenolden, for failing to obtain a certificate of occupancy prior to the sale.  Compl. ¶ 39.  This criminal citation charges Plaintiff eXp Realty with "Transfer

w/o Certificate of Occupancy" and "attempts to impose a fine." Compl. ¶ 40. Plaintiff eXp Realty entered a plea of "not guilty" in response to the criminal citation and the Magisterial District Court in Glenolden Borough scheduled a hearing to address the criminal citation. Compl. ¶¶ 42-43. "At the core of procedural due process jurisprudence is the right to advance notice of significant deprivations of liberty or property and to a meaningful opportunity to be heard." Abbot v. Latshaw, 164 F.3d 141, 146 (3d Cir. 1998). Plaintiff eXp Realty received notice of the criminal citation and the proceeding in Magisterial District Court provides Plaintiff eXp Realty with a meaningful opportunity to be heard.

As such, Plaintiffs have not adequately alleged a procedural due process violation, and this claim must be dismissed.

### 2. Substantive Due Process Claim

To establish a substantive due process claim, "a plaintiff must prove the particular interest at issue is protected by the substantive due process clause and the government's deprivation of that protected interest shocks the conscience." Chainey v. St., 523 F.3d 200, 219 (3d Cir. 2008) (internal citations omitted).

As addressed above, Plaintiffs have not established that Defendants have deprived them of a property interest. Even assuming Plaintiffs have been deprived of a property interest, the conduct at issue here does not shock the conscience. The "shocks the conscience" encompasses "only the most egregious official conduct." United Artists Theatre Circuit, Inc. v. Twp. of Warrington, 316 F.3d 392, 400 (3d Cir. 2003). In Eichenlaub v. Twp. of Indiana, the Third Circuit provided examples of what constitutes conscience-shocking behavior in the land use context, including evidence of corruption or self-dealing, bias against an ethnic group, and intent to interfere with otherwise constitutionally protected activity. 385 F.3d 274, 286-88 (3d Cir. 2004). A bad faith

violation of state law does not meet the standard of shocking the conscience.  See Highway Materials, Inc. v. Whitemarsh Twp., 386 F. App'x 251, 257-258 (3d Cir. 2010) ("If defendants intentionally misapplied the ordinances and disregarded their duty under Pennsylvania law to conduct a good-faith evaluation of HMI's proposal, that 'remains only a violation of state law.'); see also Blain v. Twp. of Radnor, 2004 WL 1151727, at *5 (E.D. Pa. May 21, 2004), aff'd, 167 F. App'x 330 (3d Cir. 2006) ("[E]ven allegations of bad faith enforcement of an invalid zoning ordinance do not, without more, state a substantive due process claim.") (internal citation omitted).

Here, Plaintiffs allege that Defendants know or should know that their enforcement of the Ordinances is contrary to MCOCA and as such, is unconstitutional.  Compl. ¶ 50.  Plaintiffs allege that Glenolden Borough and the Borough Officials have implemented unconstitutional obstacles to obtaining a U & O Certificate through means such as the "Buyer's Acknowledgement Form," which Glenolden Borough requires a prospective purchaser to execute if the property inspection reveals one or more deficiencies or violations.  Compl. ¶ 26.  Further, Plaintiffs allege that the Borough Official's Enforcement of § 135-28, which requires home sellers to obtain sewer lateral inspections prior to the issuance of a U & O certificate under the Ordinances, is in violation of both MCOCA and the Ordinances in ways including, but not limited to, falsely advising homeowners that the resale certificate may be issued at the borough's discretion.  Compl. ¶ 30. The Plaintiffs do not allege any corruption, self-dealing, or bias by the Defendants.  Eichenlaub, 385 F.3d at 286-88. Plaintiffs' allegations amount at most to a bad-faith violation of MCOCA which does not meet the "shocks the conscience" standard.  Highway Materials, Inc., 386 F. App'x at 257-258.  Therefore, Defendants' motion to dismiss Plaintiffs' substantive due process claim under 42 U.S.C. § 1983 is granted.[3]

---

[3] Since Defendants' motion to dismiss Plaintiffs' § 1983 claim is granted, Defendants' motion to dismiss Plaintiffs' conspiracy claims as they relate to Plaintiffs' § 1983 claim is necessarily also granted.

**E.  Count IV – Preemption**

In Pennsylvania, a local ordinance may be preempted by a state law under one of three generally recognized theories: (1) express preemption, (2) field preemption, or (3) conflict preemption.  Hoffman Min. Co. v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty., 32 A.3d 587, 593-94 (Pa. 2011).  Express preemption applies where "the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter."  Id. at 593.  Conflict preemption applies where the local enactment "irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute."  Id.  at 594.  Field preemption applies where "analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments."  Id.

Here, Plaintiffs concede that Glenolden Borough adopted "MCOCA compliant Ordinances" in 2019.  Compl. ¶ 16.  Plaintiffs allege that Glenolden Borough's enforcement of the Ordinances is in direct conflict with MCOCA, and the Ordinances and that state law preempts such enforcement. Compl.  ¶¶ 85-87.   This is not a preemption issue. "The preemption doctrine establishes a priority between potentially conflicting laws enacted by various levels of government."  Huntley & Huntley, Inc. v. Borough Council of Borough of Oakmont, 964 A.2d 855, 862 (Pa. 2009).  "Under this doctrine, local legislation cannot permit what a state statute or regulation forbids or prohibit what state enactments allow."  Id.  Preemption addresses the issue of when "the state may bar local governing bodies from legislating in a particular field."  Hoffman Min. Co., 32 A.3d at 593.  Plaintiffs do not allege that the Ordinances are preempted by state law, nor could they when the Ordinances were brought into compliance with MCOCA in 2019, and therefore, Plaintiffs' preemption claim is dismissed.

### F.  Count V – Tortious Interference Claim

Under the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa. C.S.A. § 8541 et seq., "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person."  42 Pa. C.S.A. § 8541.  The statute carves out nine narrow exceptions to immunity under which a local agency can be held liable.  See 42 Pa. C.S.A. § 8542(b)(1)-(9).[4]

Here, Defendants claim they are immune from tort liability and that none of Plaintiffs' factual allegations fit within any of the exceptions set forth in the PSTCA.  ECF No. 16-1 at 6. Plaintiffs effectively acknowledge that Defendant Glenolden Borough is immune from the tortious interference claim, and this Court finds—where none of the enumerated exceptions to immunity apply—that Defendant Glenolden Borough is immune from tort liability.  See ECF No. 19-1 at 6 ("Defendant Razzi is not immune from his intentionally tortious conduct, even though Glenolden Borough may be immune).  Therefore, Plaintiffs' motion to dismiss the tortious interference claim (Count V) against Defendant Glenolden Borough is granted.

However, Plaintiffs assert that Defendant Brian Razzi is not immune under the PSTCA because the tortious interference claim was based on his willful and intentional conduct.  ECF No. 19-1 at 6.[5]  The official immunity under PSTCA also extends to any employee of a local agency if the employee caused the injury while acting within the scope of his or her office or duties.  42

---

[4] These exceptions are (1) vehicle liability; (2) care, custody or control of personal property; (3) care, custody or control of government real property; (4) trees, traffic controls and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; (8) care, custody or control of animals; and (9) sexual abuse.

[5] At the time Plaintiffs filed their Response in Opposition to Defendant Borough of Glenolden and Brian Razzi's Motion to Dismiss, Defendant Tartaglia had not yet appeared in this case.  Defendant Tartaglia's subsequent Motion to Dismiss makes clear that it joins Defendant Borough of Glenolden and Brian Razzi's Motion to Dismiss as it relates to him.  Since Plaintiff's two state tort claims apply to both individual defendants—Defendant Brian Razzi and Defendant Anthony Tartaglia—this Court's analysis with respect to Defendant Razzi will apply with equal force to Defendant Tartaglia.

Pa. C.S.A.. § 8545; <u>Lawson v. City of Coatesville</u>, 42 F. Supp. 3d 664, 683 (E.D. Pa. 2014). However, an employee may still be held liable where his conduct constituted a "crime, actual fraud, actual malice or willful misconduct." 42 Pa. C.S.A § 8550. Willful misconduct has the same meaning as the term "intentional tort" and is described as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied." <u>Bright v. Westmoreland Cnty.</u>, 443 F.3d 276, 287 (3d Cir. 2006) (internal citations omitted).

To prevail on a claim for tortious interference with existing or prospective contractual relations under Pennsylvania law, a plaintiff must prove:

> (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party;
>
> (2) purposeful action by the defendant, specifically intended to harm an existing relationship or intended to prevent a prospective relation from occurring;
>
> (3) the absence of privilege or justification on the part of the defendant;
>
> (4) legal damage to the plaintiff as a result of the defendant's conduct; and
>
> (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference

<u>Acumed LLC v. Advanced Surgical Servs., Inc.</u>, 561 F.3d 199, 212 (3d Cir. 2009). Here, Plaintiffs allege that Plaintiff eXp Realty (1) entered into an agreement to list the Property for sale in Glenolden Borough, (2) currently has listing agreements in Glenolden Borough, and (3) will have listing agreements in Glenolden Borough. Compl. ¶ 89. Plaintiffs also allege that Defendants caused a Criminal Citation to be issued to Plaintiff eXp Realty in direct contravention of MCOCA and the Ordinances. Compl. ¶ 91.

Here, Plaintiffs have not adequately pled that Defendants interfered with Plaintiffs' current listing agreements or their ability to have listing agreements in Glenolden Borough in the future. Plaintiffs have not pointed to "purposeful action by the defendant[s], specifically intended to harm" their existing or prospective contractual relationships.  Acumed, 561 F.3d at 212.  Indeed, Plaintiffs allege that Defendants' actions, "whether intentional or negligent," have resulted and will result in economic harm to Plaintiffs. Compl. ¶ 93.  Tortious interference with contractual relations is an intentional tort, yet Plaintiffs have not alleged intent on the part of Defendants, and thus their allegations are insufficient.[6]  Furthermore, Plaintiffs make no allegation that Defendants impeded the contract for sale of the Property, which Plaintiffs successfully sold without the requisite U & O certificate.

Since Plaintiffs have not adequately pled a claim for tortious interference, the willful misconduct exception does not apply to Defendant Brian Razzi. See E. Rockhill Twp. v. Richard E. Pierson Materials Corp., 386 F. Supp. 3d 493, 502 n.9 (E.D. Pa. 2019) ("Where, as here, the plaintiffs have not pled sufficient facts to allege an intentional tort, the willful misconduct exception to immunity does not apply.").  Thus, Defendants' motion to dismiss the tortious interference claim (Count V) against Defendant Brian Razzi is granted.

### G.  Count VI – Conspiracy Violations of 42 U.S.C. § 1985 & Pennsylvania Common Law

Plaintiffs bring a claim for violations of 42 U.S.C. § 1985, but they do not identify which provision of 42 U.S.C. § 1985 they are invoking in their Complaint.  This Court will examine each of the possibilities.  Section 1985(1) involves a situation where an officer is prevented from performing official duties, which is not applicable here.  Section 1985(2) deals with obstruction of

---

[6] Since this Court has determined that Plaintiffs failed to plead intentional conduct on the part of Defendants, and therefore the tortious interference claim must be dismissed, it need not consider the remaining tortious interference factors.

justice, which is also not applicable here.  Therefore, the only possible section of 42 U.S.C. § 1985 which could apply here is Section 1985(3).  Section 1985(3) states:

> **Depriving persons of rights or privileges.** If two or more persons in any State or Territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice-President, or as a member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).  In Rahman—where the Plaintiffs brought an identical claim for violations of 42 U.S.C. § 1985 against Defendant Borough of Glenolden—the Court held that Plaintiffs' claim fails because Plaintiffs failed to plead facts to establish that they are members of a specific class that has been subject to discriminatory conduct.  2020 WL 1676399, at *13.  Rahman cited the Third Circuit's test for an action under 42 U.S.C. §1985(3), which states that a plaintiff must allege (1) "that the conspiracy was motivated by discriminatory animus against an identifiable class, and (2) that the discrimination against the identifiable class was invidious."  Id. at *13 (citing Farber v. City of Paterson, 440 F.3d 131, 135 (3d Cir. 2006)).  The Court in Rahman found the Plaintiffs' Complaint devoid of the allegations necessary to proceed under 42 U.S.C. §1985(3), and this Court finds that the same logic applies here.  Plaintiffs' allegations that Defendants "engaged in a conspiracy to deprive Plaintiffs of their substantive and procedural due process rights and equal

protections of the privileges afforded to other Pennsylvania residents under MCOCA" does not meet the mark.  Compl. ¶ 95.

Plaintiffs acknowledge that Defendant Glenolden Borough is immune from Plaintiffs' common law conspiracy claim under the PSTCA.  ECF No. 19-1 at 7.  Plaintiffs argue, however, that Defendant Brian Razzi is not immune based on his intentional conduct.  Id. at 6-7.  Under Pennsylvania law, the following elements are required to state a cause of action for civil conspiracy: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.  Gen. Refractories Co. v. Fireman's Fund Ins. Co., 337 F.3d 297, 313 (3d Cir. 2003) (citation and internal quotations marks omitted).  "Proof of malice is an essential part of a cause of action for conspiracy," and "malice requires that the conspirators act with the sole purpose of injuring the plaintiff."  Sarpolis v. Tereshko, 625 F. App'x 594, 601 (3d Cir. 2016) (internal citations omitted).

Plaintiffs argued that Defendants conspired with others to tortiously interfere with Plaintiffs' contractual relations.  ECF No. 19-1 at 7.  As discussed above, Plaintiffs did not adequately plead tortious interference and therefore have not pled that two or more persons acted with a common purpose to do an unlawful act.  Further, Plaintiffs have not alleged that the sole purpose of any conspiracy was to injure Plaintiffs, and therefore have not adequately alleged malice on the part of Defendant Razzi.  Plaintiffs here, as in Rahman, "simply failed to plead specific facts in support of the alleged conspiracy," and as such, Plaintiffs' conspiracy claims must be dismissed.  2020 WL 1676399, at *13.

## VI.    CONCLUSION

For the foregoing reasons, Defendants' Motions to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) are granted without prejudice.  An appropriate order follows.

O:\CIVIL 23\23-4287 eXp Relaty v Boro of Glenolden\23cv4287 Memorandum re Motion to Dismiss.docx